625 A.2d 126

**Paul M. KACZMARCIK, Petitioner**

v.

**CARBONDALE AREA SCHOOL DISTRICT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1992.

Decided April 29, 1993.

Anthony C. Santore, for petitioner.

James J. Walker, for respondent.

Before PALLADINO and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Paul Kaczmarcik appeals an order of the Secretary of Education which dismissed his teacher tenure appeal. Kaczmarcik sought review of a resolution of the Board of Directors of the Carbondale Area School District which demoted him from his position of vice-principal to classroom teacher. We affirm.

Kaczmarcik was a vice-principal of the Junior/Senior High School for the School District for a number of years. For a portion of that tenure, he was also the School District's transportation coordinator [1]; according to Kaczmarcik's testi-

---

1. No professional certificate is needed for this position. The School Code defines "Professional employe" as "those who are certificated as teachers, supervisors, supervising principals, principals, assistant principals, vice-principals, directors of vocational education, ... school counselors, child nutrition program specialists, school librarians, school secretaries the selection of whom is on the basis of merit by

mony, he was paid an additional $1500.00/year for that job. In mid–1991, during the ongoing preparation of the budget for the 1991–92 school year, the Board passed a resolution which eliminated the position of vice-principal held by Kaczmarcik and furloughed seven teachers. That resolution specified that both actions were being taken because of a substantial decline in student enrollment; it also stated that economic concerns were behind the elimination of the vice-principal position. Since the elimination of the vice-principal job required Kaczmarcik to go back to the classroom, the action constituted a "demotion" which, under Section 1151 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1151, required a hearing before School Directors upon Kaczmarcik's refusal to consent to the demotion. When Kaczmarcik notified the School District that the original date set for the hearing, July 10, 1991, was not convenient the parties agreed that the hearing would be held on August 27, 1991. The School Directors unilaterally and without Kaczmarcik's consent rescheduled the hearing for September 5, 1991, the date when the hearing was held.

The School Directors appointed Ned Abrahamsen, Esquire, to act as the hearing officer, an action to which Kaczmarcik objected. At that hearing, the parties stipulated that Kaczmarcik had been demoted. Kaczmarcik also testified that he had been relieved of his duties as transportation coordinator. The School District then presented the testimony of Dr. Joseph F. Como, the district's superintendent. Como described a drop in enrollment of 13.6% for the five year period immediately prior to the time of the demotion. He also testified that approximately 63% of that decline was at the secondary level as opposed to the elementary level. Como stated that Kaczmarcik was the least senior of the five administrators in the School District. He noted that during the budgetary process, at least six separate budgets were proposed because of difficulty in reaching agreement in light of

eligibility lists and school nurses." 24 P.S. § 11–1101(1). That position is not entitled to protection under the School Code and is thus not involved in this appeal.

overall declining revenues to the School District. Como testified that the decision to eliminate the position of vice-principal was made by the Board of School Directors without any proposal from him for such action. Through cross-examination of the School District's witnesses, Kaczmarcik was able to elicit that there was no discussion concerning the educational effect of the elimination of the vice-principal position.

The hearing officer then made proposed findings of fact and conclusions of law wherein he decided that the demotion was valid as it was based upon the decline in enrollment and other economic factors. The hearing officer also concluded that Kaczmarcik had failed to prove that the demotion was arbitrary or based upon other improper considerations. By resolution of January 15, 1992, the School Directors voted to accept the recommendations of the hearing officer. Kaczmarcik then sought review from the Secretary of Education who, after making findings of fact, dismissed his appeal. Kaczmarcik now seeks our review.

In a case involving the demotion of a professional employee, our scope of review is limited to determining whether (1) the professional employee's constitutional rights were violated, (2) the Secretary committed any errors of law in making the adjudication and (3) that all necessary findings of fact are supported by substantial evidence. *Brown v. School District of Cheltenham Township,* 53 Pa.Commonwealth Ct. 483, 417 A.2d 1337 (1980). Furthermore, the Secretary is the ultimate fact finder if he or she decides to make findings of fact. *Belasco v. Board of Public Education,* 510 Pa. 504, 510 A.2d 337 (1986). With these standards in mind, we shall review Kaczmarcik's allegations of error.

He first argues that he was denied a timely hearing as required by the School Code. Hearings for demotions required by Section 1151 of the School Code are governed by Section 1127 of the School Code. The latter section requires, *inter alia,* that the hearing be held within fifteen (15) days of the written notice of the demotion. In this case, Kaczmarcik was unable to attend the hearing originally scheduled for July

10, 1991. He agreed to waive the time requirement of Section 1127 to allow a hearing to be scheduled at the convenience of both parties. The date chosen was August 27, 1991. The School Directors, unilaterally and over Kaczmarcik's specific objection, rescheduled the hearing for September 5, 1991, the date upon which it was held. Kaczmarcik argues that the unilateral rescheduling of the hearing from August 27, to a date nine days later, violated the timeliness requirements of Section 1127. We do not agree. In the letter where Kaczmarcik agreed to waive the time requirement of Section 1127, he specifically stated that hearing could be scheduled "at the convenience of both parties." This waiver could reasonably be construed to allow the School Directors to reset the hearing date. In any event, the hearing was ultimately held within nine days of August 27, the first date chosen after Kaczmarcik had agreed to waive the timeliness requirements of Section 1127. Kaczmarcik essentially takes the position that once a hearing is rescheduled, no other continuances are allowed unless both parties consent.[2] We need not decide that precise question because we believe a hearing held within fifteen days of the rescheduled date complies with the timeliness requirements of Section 1127.

■ Kaczmarcik next argues that the appointment of a hearing officer violated the School Code. Section 1151 specifically states that a demoted professional employee is entitled to a hearing "before the board of school directors . . . ." 24 P.S. § 11–1151. Section 1127, referred to in Section 1151, states that the "board of school directors . . . shall conduct a hearing" and that the professional employee is entitled to a hearing "before the board of school directors". 24 P.S. § 11–1127. Kaczmarcik thus takes the position that a hearing held by a hearing examiner who is not a member of the school board violates the requirements of the School Code.

Both parties agree that this precise question has not been decided by the appellate courts of this Commonwealth. None-

---

2. As he states in his brief, "However, once that new date had been set, it became in essence a new 'fifteenth day'." (Brief of Paul Kaczmarcik, p. 21.)

theless, there is authority which is helpful in resolving the question. In *Acitelli v. Westmont Hilltop School District*, 15 Pa.Commonwealth Ct. 214, 325 A.2d 490 (1974), a temporary professional employee received an unsatisfactory rating and was informed by the administration that he would not be offered a new contract. As permitted by law, he sought review from the school board and two hearings were held, one of which was attended by six of the nine board members and the other which was attended by seven members. When the vote was taken to affirm the administrations' decision not to offer Acitelli a new contract, six members were at the meeting and all six voted to affirm the action taken by the administration. Only three of the six member voting attended both hearings, two attended one and the last member was at neither hearing. Acitelli argues that these facts rendered the board's action invalid and violative of due process. We rejected this argument, stating:

> While it is true that only three of the six voting members attended both sessions and that one member did not attend either session, a quorum of the Board was present at each hearing session and also at the time of the vote [to not offer a contract]. Moreover, Acitelli took full opportunity to testify, to present witnesses and to cross-examine opposing witnesses, and a transcript was made available for all parties for review after the hearings were concluded. Neither due process nor the applicable statutes impel those who finally vote on the status of a teacher to have had direct aural reception of all the evidence.... Absent evidence to the contrary, the recording of the Board members' votes indicates that they gave full consideration to the testimony presented.... And, there being no evidence to the contrary here, it must be presumed the six Boaord [sic] members, who voted on the appellant's dismissal, did consider the evidence presented whether or not all were present at all of the sessions held. And, of course, they did constitute both a quorum and a majority.

*Id.* at 222, 325 A.2d at 494–95 (citations omitted).

Almost all of the relevant observations in *Acitelli* are applicable in the present case. At the time of the hearing, five

school directors were present throughout and a sixth arrived while the hearing was in progress. Further, all nine members of the Board voted on the final resolution, a majority voting to adopt the recommendations of the hearing examiner. Furthermore, Kaczmarcik was given the opportunity to present evidence and cross-examine the District's witnesses. Kaczmarcik presented no evidence proving that the members did not consider the entire record before casting their individual votes.

In *Boehm v. Board of Education of the School District of Pittsburgh,* 30 Pa.Commonwealth Ct. 468, 373 A.2d 1372 (1977), a hearing was held without a quorum, another was continued when only three members were present and the final hearing was held before eight members of the fifteen member board. Eleven members of the Board ultimately voted to dismiss the professional employee after reviewing the entire record. We held that the procedure there was not violative of the School Code. We specifically stated,

> We do not ... determine the issue of whether or not a school board may receive evidence in this type of case with less than a majority of the members present nor do we determine here whether or not a school board could appoint one or more members to receive testimony.

*Id.* at 471, n. 4, 373 A.2d at 1374, n. 4. In *Penzenstadler v. Avonworth School District,* 43 Pa.Commonwealth Ct. 571, 403 A.2d 621 (1979), we approved the suspension of a professional employee where less than a majority of the Board was present at the hearing where the entire Board voted on the personnel action. We must note that we are not called upon to decide the question of whether an appointed hearing examiner could conduct a valid hearing with no member of the Board present. What we are deciding is that the appointment of the hearing examiner in this case was violative of neither the School Code nor due process where a majority of the Board was present at the hearing and where all members voted on the matter. Therefore, Kaczmarcik's argument in this regard is rejected.

Having disposed of Kaczmarcik's two procedural matters, we must now address his claim that the demotion was

illegal. In *Sharon City School District v. Hudson,* 34 Pa.Commonwealth Ct. 278, 286, 383 A.2d 249, 253 (1978); we stated, "[f]or the demotion to be overturned on other than procedural grounds, the employee has the burden of proving the action to be arbitrary, discriminatory or founded upon improper considerations." Furthermore, such decisions are cloaked with the presumption of validity and the employee burden of proving otherwise is a heavy one. *Green v. Jenkintown School District,* 65 Pa.Commonwealth Ct. 68, 441 A.2d 816 (1982).

In the present case, the Secretary found that the reasons for the demotion were declining enrollment in the School District with a majority of that decline in the Junior/Senior High School and economic concerns. The Secretary noted that the move resulted in a cost savings to the School District. The Secretary also pointed out that seven professional employees were furloughed at the same time Kaczmarcik was demoted. In *Hudson,* we upheld a similar demotion because the record there showed, *inter alia,* a decline in student enrollment and the concomitant loss in state reimbursement along with the elimination of other positions. We believe that *Hudson* is controlling in the present case.

Kaczmarcik points to a number of factors which, in his view, show that the action taken was arbitrary, discriminatory or based upon other improper considerations. He first argues that the findings concerning declining enrollment and economic problems were not supported by substantial evidence. We need only note that the Secretary is the fact finder and as such was entitled to believe the testimony of Dr. Como which supports those factual findings. He relies heavily upon the fact that Dr. Como did not recommend that the position be eliminated. The School District's policy manual states that the superintendent was responsible for recommending the abolishment of administrative positions. While the superintendent is responsible for making recommendations, it is the School Directors who are responsible for making the final decisions on abolishment of positions and Kaczmarcik cites no

authority that the School Directors are bound by the superintendent's recommendation.

Kaczmarcik also argues that the School Directors never discussed the educational impact that would result from the abolishment of the position. While that may be true, we must point out that these matters are within the sound discretion of the School Directors and that we may not substitute our discretion for that of the school board. *Reed v. Juniata–Mifflin Counties Area Vocational–Technical School,* 112 Pa.Commonwealth Ct. 529, 535 A.2d 1229 (1988). Simply put, Kaczmarcik failed to meet the heavy burden of proving that the action was arbitrary, discriminatory or based upon other improper considerations. That being the case and since there were no procedural irregularities, we must affirm the Secretary's order dismissing Kaczmarcik's appeal and upholding the demotion.

Affirmed.

## ORDER

NOW, April 29, 1993, the order of the Secretary of Education, dated April 7, 1992, at Teacher Tenure Appeal No. 1–92, is affirmed.

FRIEDMAN, Judge, dissenting.

I must respectfully dissent from the majority opinion because I believe the hearing of September 5, 1991 violated §§ 1127 and 1151 of the School Code.

This court has previously held that "where a school board undertakes to terminate a contract, dismiss or demote a professional employe, the procedure set forth in the School Code must be *strictly followed,* and failure on the part of the Board to comply therewith renders an attempted demotion abortive." *Abington School Board v. Pittenger,* 9 Pa.Commonwealth Ct. 62, 69, 305 A.2d 382, 386 (1973) (emphasis added). Here, the school board did not strictly follow the procedures required by §§ 1127 and 1151.

Under § 1127 of the School Code, Kaczmarcik was entitled to a hearing within 15 days of receiving written notice of his demotion. Kaczmarcik agreed to extend this time requirement and re-schedule the hearing for the specific date of August 27, 1991. He did not agree that the school directors could unilaterally reschedule the hearing a second time for any date they wished.

The majority quotes that portion of the letter in which Kaczmarcik agreed to reschedule the hearing "at the convenience of *both* parties" (R.R. at 138a) (emphasis added). The majority believes that "[t]his waiver could reasonably be construed to allow the School Directors to reset the hearing date." (Opinion at 128.) To reach this conclusion, the majority would have us interpret the words "unilateral" and "mutual" as synonymous. I cannot agree and, therefore, fail to see the reasonableness of this construction, particularly because the school directors unilaterally re-scheduled the hearing date a second time "over Kaczmarcik's specific objection." *Id.*

The majority opinion then concludes that, in any event, the school directors complied with the timeliness requirement of § 1127 because the second re-scheduled date, September 5, was less than 15 days after August 27. However, § 1127 requires the hearing be held within 15 days of Kaczmarcik receiving *written notice* of his demotion. The parties' agreement to extend the 15–day time period does not change the date on which Kaczmarcik received written notice. Thus, when the parties agreed to *extend* the 15–day time period to August 27, August 27 became the new "fifteenth day." The parties' agreement did not *re-start* the 15–day time period as of August 27. Accordingly, I see no basis for the majority's conclusion that a hearing held within fifteen days of August 27 complies with § 1127.

In addition to being untimely, Kaczmarcik's hearing violated § 1151 of the School Code. Both § 1127 and § 1151 of the School Code require that Kaczmarcik receive a hearing "before the board of school directors." This is not what he received. Instead, Kaczmarcik received a hearing before a hearing examiner appointed by the school directors without

his participation or consent. School directors are elected officials obligated by §§ 1127 and 1151 to conduct hearings in certain matters, including demotions contested by professional employees. The School Code provides no authority for the school directors to appoint a non-director to preside over such hearings. To do so was an improper delegation of their power.

The majority excuses this improper delegation of power, relying on *Acitelli v. Westmont Hilltop School District,* 15 Pa.Commonwealth Ct. 214, 325 A.2d 490 (1974). However, *Acitelli* is inapplicable to the case before us. *Acitelli* dealt with the propriety of school directors' voting on final disposition of the case when they had not attended every hearing. In *Acitelli,* we determined that school directors could vote under these circumstances as long as a quorum attended each hearing, and all board members had access to transcripts of the complete record before they voted.

The majority argues that, under *Acitelli,* Kaczmarcik's hearing was proper because six out of nine board members attended the hearing and observed all that occurred before the hearing examiner. Were we deciding their right to vote, *Acitelli* would control. However, that is not the issue here. Unlike the situation in *Acitelli,* a non-board member substituted for a board member to preside over the hearing. The propriety of appointing a non-board member to preside over the hearing in a position of authority presents policy considerations which are entirely different from those in *Acitelli.* Although six out of nine members of the board were present for at least part of the hearing, the presence of an outside hearing examiner precluded these six board members from assuming an active role in the hearing and from questioning the witnesses themselves. Furthermore, there is danger that the board members may have been unduly influenced by the hearing examiner's individual bias and apparent authority. This is especially true because the hearing examiner submitted recommendations to the board, and the directors merely voted on whether to accept or reject those recommendations. Had the board members been actively involved in making

their own findings of fact and conclusions of law, they might have reached the opposite conclusion.

Because the hearing in this matter was untimely and improperly conducted by a non-board member, the School Board's actions were void. I would reverse and order the School Board to reinstate Kaczmarcik to his former position.